J-S89013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CURTIS CROSLAND, | |
| Appellant | No. 3541 EDA 2015 |

Appeal from the PCRA Order October 20, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0132641-1988

BEFORE:  SHOGAN, MOULTON, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED January 12, 2017**

Curtis Crosland ("Appellant") appeals *pro se* from the order denying his eighth petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546.  We affirm.

On December 16, 1988, Appellant was found guilty of murder in the second degree, robbery, and weapons offenses. Appellant was sentenced to life imprisonment. On September 20, 1990, this Court reversed the judgment of sentence and awarded Appellant a new trial.

On January 29, 1991, Appellant was again convicted of murder in the second degree, robbery, and weapons offenses. Appellant was sentenced on June 10, 1992, to life imprisonment on the murder charge and consecutive

---

[*] Former Justice specially assigned to the Superior Court.

sentences of ten to twenty years of incarceration on the robbery charge, and two and one-half to five years on the weapons offenses. This Court affirmed the judgment of sentence for murder and weapons offenses but vacated the sentence on the robbery conviction, and the Pennsylvania Supreme Court denied leave to appeal. *Commonwealth v. Crosland*, 631 A.2d 212 (Pa. Super. 1993) (unpublished memorandum), *appeal denied*, 639 A.2d 24 (Pa. 1994).

Appellant filed the instant PCRA petition, his eighth, on July 25, 2013.[1] Additionally, he filed a supplemental petition on February 12, 2014, and

_____

[1] Appellant filed his first PCRA petition on March 30, 1995. It was denied on October 10, 1996. This Court affirmed the denial of the petition on September 16, 1997, and the Pennsylvania Supreme Court denied leave to appeal on March 10, 1998. *Commonwealth v. Crosland*, 704 A.2d 160 (Pa. Super. 1997) (unpublished memorandum), *appeal denied*, 723 A.2d 669 (Pa. 1998).

Appellant filed his second PCRA petition on March 9, 1999. It was dismissed as untimely on January 24, 2000. This Court affirmed the dismissal on January 25, 2001. *Commonwealth v. Crosland*, 776 A.2d 289 (Pa. Super. 2001) (unpublished memorandum). Appellant did not seek leave to appeal to the Pennsylvania Supreme Court.

Appellant filed a third PCRA petition on May 17, 2001, styled as a petition for writ of *habeas corpus*, which the PCRA court dismissed on January 7, 2002. This Court affirmed the dismissal on February 25, 2003. *Commonwealth v. Crosland*, 821 A.2d 131 (Pa. Super. 2003) (unpublished memorandum). Appellant did not seek leave to appeal to the Pennsylvania Supreme Court.

On May 4, 2004, Appellant filed a fourth PCRA petition. It was dismissed as untimely on August 24, 2004. This Court affirmed the dismissal on June 22, 2005, and the Pennsylvania Supreme Court denied leave to appeal
*(Footnote Continued Next Page)*

another petition on August 12, 2014, both without leave of court pursuant to Pa.R.Crim.P. 905. The PCRA court issued a notice of intent to dismiss pursuant to Pa.R.Crim.P. 907 on June 23, 2015, and Appellant filed a response on July 14, 2015. The PCRA court dismissed Appellant's petition on October 20, 2015. This appeal followed. Appellant and the PCRA court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following questions for our review, which we reproduce verbatim:

> I. Did the PCRA court err, and commit reversible error when it dismissed petition as untimely filed without the benefit of a properly conducted evidentiary hearing to determine the credibility of Micheal Turner's presented statement(s) that lead to the filing of said petition, and evidence of Delorus

_(Footnote Continued)_ ─────────────

on March 31, 2006. **Commonwealth v. Crosland**, 883 A.2d 686 (Pa. Super. 2005) (unpublished memorandum), _appeal denied_, 898 A.2d 1069 (Pa. 2006).

On June 6, 2006, Appellant filed his fifth PCRA petition. It was dismissed as untimely on March 30, 2007. This Court affirmed the dismissal on April 1, 2008, and the Pennsylvania Supreme Court denied leave to appeal on December 2, 2008. **Commonwealth v. Crosland**, 953 A.2d 826 (Pa. Super. 2008) (unpublished memorandum), _appeal denied_, 961 A.2d 858 (Pa. 2008).

Appellant filed his sixth PCRA petition on January 30, 2009. The petition was dismissed as untimely on October 14, 2009. This Court affirmed the dismissal on August 12, 2010. **Commonwealth v. Crosland**, 11 A.3d 1022 (Pa. Super. 2010) (unpublished memorandum). Appellant did not seek leave to appeal to the Pennsylvania Supreme Court.

Appellant filed his seventh PCRA petition on May 16, 2012. The PCRA court dismissed the petition as untimely on June 19, 2013. Appellant did not appeal that decision.

Tilghman found as a result in support of statement and therefore being able to render a fully informed legal opinion on Petitioner"s innocenc?

II.     Did the PCRA court err, and commit reversible error when it failed to recognized a timely presented motion to the court, that was pertinent to the due process of law with regards to final disposition of a PCRA petition ?

III.    Did the Commonwealth's attorney perpetrate a knowing fraud upon the court when it failed to disclose discovered material to the defense, that was presented to the court at trial, and knew was inherently false in nature ?

IV.    Whether the PCRA court erred that other innocence evidence of a district attorney officer conducted an undisclosed investigation and reported state key witness Rodney Everett excluded Petitioner of 1986 murder confession the time period between June of 1986 and Late as March 27, 1987 was precluded due to due diligence after the state under these proceedings conceded for the first time full discovery was denied which included the statement of William Massey during trial and under the first PCRA review denied any evidence existed that excluded Petitioner of the murder confession prior to Everett's recantation whereas Massey's undisclosed statement did, and would same be unconstitutional now to not review in light of Delorus Tilghman"s new evidence when the jury was asked to compare both statements to support a finding of a guilty verdict even though the claim was initially filed pursuant to Perkins Super. ?

V.     Whether Petitioner should be entitled to relief of his trial ineffective claims under Martinez Super., in light Henkel Super., in that the Sixth Amendment violations is a miscarriage of justice. ?

VI.    Whether Miller vs. Alabam/Montgomery Super., juvenile claim entitles Petitioner to retroactive relief

Appellant's Brief at vi.  We note that Appellant filed a reply brief in which he restates his arguments as objections to the Commonwealth's responses.

When reviewing the propriety of an order denying PCRA relief, this Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Robinson*, 139 A.3d 178, 185 (Pa. 2016). The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. *Commonwealth v. Lippert,* 85 A.3d 1095, 1100 (Pa. Super. 2014).

Initially, we address whether this appeal is properly before us. The PCRA court dismissed Appellant's petition as untimely. "As the timeliness of a PCRA petition is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Callahan*, 101 A.3d 118, 121 (Pa. Super. 2014) (citation omitted). Moreover, the timeliness of a PCRA petition is a jurisdictional threshold that may not be disregarded in order to reach the merits of the claims raised in a PCRA petition that is untimely. *Commonwealth v. Cintora*, 69 A.3d 759, 762 (Pa. Super. 2013). "We have repeatedly stated it is the [petitioner's] burden to allege and prove that one of the timeliness exceptions applies. *See*, *e.g.*, *Commonwealth v. Beasley*, 741 A.2d 1258, 1261 (Pa. 1999). Whether [a petitioner] has carried his burden is a threshold inquiry prior to considering the merits of any claim." *Commonwealth v. Edmiston*, 65 A.3d 339, 346 (Pa. 2013).

In order to be considered timely, a first, or any subsequent PCRA petition, must be filed within one year of the date the petitioner's judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). Since his sentencing on June 10, 1992, Appellant has filed seven PCRA petitions in the court below; as such, his instant petition would be time-barred absent the applicability of one of the exceptions enumerated in 42 Pa.C.S. § 9545(b)(1).[2]

A petition invoking one of these exceptions must be filed within sixty days of the date the claim could first have been presented. 42 Pa.C.S. § 9545(b)(2). In order to be entitled to the exceptions to the PCRA's one-year filing deadline, "the petitioner must plead and prove specific facts that demonstrate his claim was raised within the sixty-day time frame" under

_____

[2] The exceptions to the timeliness requirement are:

(i)     the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)   the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i), (ii), and (iii).

section 9545(b)(2). ***Commonwealth v. Carr***, 768 A.2d 1164, 1167 (Pa. Super. 2001). "If the petition is determined to be untimely, and no exception has been pled and proven, the petition must be dismissed without a hearing because Pennsylvania courts are without jurisdiction to consider the merits of the petition." ***Commonwealth v. Perrin***, 947 A.2d 1284, 1285 (Pa. Super. 2008).

Throughout his first three issues, Appellant invokes two of the three enumerated exceptions to the PCRA time-bar. First, Appellant raises the second exception, claiming newly-discovered facts that were unknown to him and that allegedly could not have been ascertained by the exercise of due diligence. 42 Pa.C.S. § 9545(b)(1)(ii).[3] According to Appellant, the newly discovered facts appear in an affidavit by Michael Turner dated July 8, 2014, which Appellant attached to his second unauthorized supplemental petition. Newly Supplemental Petition, 8/12/14, at Appendix A. Appellant

---

[3] The Pennsylvania Supreme Court recently addressed this exception again in ***Commonwealth v. Mitchell***, 141 A.3d 1277 (Pa. 2016):

> The "newly-discovered fact" exception applies only to the PCRA's time bar, and it "requires petitioner to allege and prove that there were "facts" that were "unknown" to him and that he exercised due diligence. An "after-discovered evidence" claim, by contrast, provides a basis for substantive relief and requires that the proffered evidence be "exculpatory" and that it "would have changed the outcome of the trial."

***Mitchell***, 141 A.3d at 1283 n.4 (quoting ***Commonwealth v. Bennett***, 930 A.2d 1264, 1270–1273 (2007)).

claims that his relative, Ms. Tilghman, gave false testimony at his trial when she denied having mental health issues and that Michael Turner's affidavit substantiates her mental illness. Appellant's Brief at 1–8 (citing N.T., 1/25/91, at 90). In further support of his argument, Appellant cites to a recorded statement Ms. Tilghman gave to Michael Turner's attorney months before Appellant's arrest, in which she disclosed her mental health issues. *Id.* at 2–7 (citing Tilghman Statement, 4/27/87, at 7–11). Appellant also claims that, unbeknownst to him at trial, Detective Cimino knew about Ms. Tilghman's mental health issues. *Id.* at 8–11, 14–16.

The Commonwealth counters that Appellant's new-facts claim "was never properly raised before the PCRA court. He addressed it only in one of his unauthorized amended petitions and in his response to the PCRA court's Rule 907 notice." Commonwealth's Brief at 14 (citations omitted). According to the Commonwealth, Appellant was required "to plead any time-bar exception in either his petition or in an amended petition filed with leave of court." *Id.* at 14–15 (citations omitted).[4] Additionally, the

_____

[4] We disagree with the Commonwealth's suggestion that Appellant has waived this claim by raising it in a supplemental PCRA petition filed without leave of court. When a PCRA court fails to strike a supplemental petition and addresses issues raised therein in ruling upon the petition, the PCRA court implicitly permits amendment under Pa.R.Crim.P. 905(A). *See Commonwealth v. Brown*, 141 A.3d 491, 504–505 (Pa. Super. 2016) ("[W]hen a petitioner files supplemental materials to a PCRA petition, and the PCRA court considers such materials, an attempt by the Commonwealth to preclude consideration of such materials fails."). Herein, not only did the
*(Footnote Continued Next Page)*

Commonwealth contends that Appellant failed to properly develop this claim because he did not "plead and offer to prove in his petition that he proffered the Turner affidavits with the due diligence the PCRA required." *Id.* at 15, 19. Moreover, the Commonwealth argues that Appellant's "claim to the time-bar exception was unavailing because it consisted merely of new sources for previously known information" and "could be used only for impeachment purposes." *Id.* at 16, n.4 (citations omitted).

The PCRA court crystallized the Tilghman portion of Appellant's newly-discovered-facts argument as follows:

> [Appellant] claimed to have [newly]-discovered evidence concerning the testimony of Delorus Tilghman,[5] who testified at [Appellant's] trial. [Appellant] submitted an affidavit from Michael Turner claiming to have information concerning the

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

PCRA court not strike Appellant's supplemental petitions, it entered its order of dismissal after "consideration of Petitioner's Post Conviction Relief Act Petition, and all supplemental petitions, and Petitioner's Response to the Notice of Intent to Dismiss Pursuant to Pa.R.Crim.P. 907." Order, 10/20/15. Moreover, the PCRA court addressed the section 9545(b)(1)(ii) claim raised in Appellant's supplemental petition. PCRA Court Opinion, 2/1/16, at 3–5. Under the circumstances, the Commonwealth may not avail itself of waiver.

However, because Appellant did not raise the Detective Cimino portion of his section 9545(b)(1)(ii) claim in his eighth PCRA petition or supplemental filings and the PCRA court did not address that part of the claim, the Commonwealth's waiver argument prevails.

5 Ms. Tilghman's first name is spelled in various ways throughout the record: "Delorus," "Dolores," and "Delores." We shall refer to her as Ms. Tilghman. She testified at Appellant's trial that she overheard him and two other people discussing the killing; specifically, she heard Appellant state he was afraid someone would come forward to claim a reward for information about the murder. N.T., 1/25/91, at 72, 79.

truthfulness of Delorus Tilghman. [Appellant] submitted two affidavits from Michael Turner; one dated July 8, 2014, and one dated August 22, 2000, which is notarized. Mr. Turner states that had he been called to testify at [Appellant's] trial, he would have given testimony to support his claim that Ms. Tilghman, who is the mother of his children, had a propensity and motive to lie.

PCRA Court Opinion, 2/1/16, at 3–4 (unnumbered). In disposing of this part

of Appellant's new-facts claim, the PCRA court opined as follows:

Upon review of this claim, it is clear that this newly-discovered evidence claim is clearly untimely given that Mr. Turner's affidavit is dated August 22, 2000. [Appellant] raised this claim in 2013, which is well past the 60 day time period to file newly discovered claims. [Appellant] offered no reason to explain the delay and by waiting so long to raise the claim, he failed to demonstrate due diligence as required by the law to overcome the PCRA's time bar. Thus, this court was without jurisdiction to review the merits of this claim.

As for Mr. Turner's affidavit dated July 8, 2014, this document contained a written statement signed by Ms. Delores Tilghman. The statement was made on April 27, 1987. Mr. Turner's July 8, 2014, affidavit referenced that Attorney Daniel Paul Alva had obtained a taped interview with Ms. Tilghman. Mr.Turner admits in his July 8, 2014 affidavit that his attorneys played the tape of Ms. Tilghman at his preliminary hearing in May of 1987. That was before both of [Appellant's] trials and could have been used to cross examine Ms. Tilghman. Therefore, the alleged [newly]-discovered facts advanced by [Appellant] were discoverable since 1987. A PCRA claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b). Therefore, this claim affords no relief. *See also Commonwealth v. Marshall*, 947 A.2d 714, 720 (Pa. 2008) (holding that the focus of the newly-discovered evidence exception "is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.").

PCRA Court Opinion, 2/1/16, at 4–5 (unnumbered).

Upon review of Appellant's arguments and the certified record, we conclude that his petition was filed within sixty days of Michael Turner's July 8, 2014 affidavit. Nevertheless, Appellant is not entitled to relief under section 9545(b)(1)(ii) for multiple reasons. First, we agree with the PCRA court that, given the information and dates revealed in Michael Turner's affidavits, Appellant could have raised this claim in a prior proceeding through the exercise of due diligence. PCRA Court Opinion, 2/1/16, at unnumbered 5. *See Commonwealth v. Burton*, 121 A.3d 1063, 1071 (Pa. Super. 2015) (*en banc*) ("[D]ue diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief.") (citations omitted). The record does not reveal any reasonable efforts by Appellant to present his newly discovered-facts claim within the requisite sixty-day time period. Because he did not, it is waived. 42 Pa.C.S. § 9544(b).

Second, Appellant's newly-discovered facts amount to previously known facts delivered by new sources. *See Commonwealth v. Marshall*, 947 A.2d 714, 720 (Pa. 2008) (holding that the focus of section 9545(b)(1)(ii) "is on the newly discovered **facts**, not on a newly discovered or newly willing source for previously known facts") (emphasis in original). Here, Appellant knew about Ms. Tilghman's mental health issues and Michael Turner's relationship to Ms. Tilghman. What he characterizes as new

facts are, rather, new sources. Such a claim does not afford relief. Third, Appellant's newly-discovered facts regarding Ms. Tilghman's mental health could be used only to impeach her credibility, which is not a basis for relief. ***Commonwealth v. v. Abu-Jamal***, 941 A.2d 1263 (Pa. Super. 2008). For these reasons, we conclude that Appellant's claim does not render his petition timely under section 9545(b)(1)(ii).

Appellant also invokes the first time-bar exception within his first three issues, asserting interference by government officials with the presentation of his claim. 42 Pa.C.S. § 9545(b)(1)(i). According to Appellant, the Commonwealth was aware of Ms. Tilghman's mental health issues, Detective Cimino's knowledge of the same, and the recantation of an unavailable Commonwealth witness, Rodney Everett, but it failed to disclose that information to Appellant in violation of ***Brady v. Maryland***, 373 U.S. 83 (1963). Appellant's Brief at 7, 15–26; 42 Pa.C.S. § 9545(b)(1)(i).[6]

In response, the Commonwealth observes that Appellant "argues, in a rambling, disjointed fashion, that the Commonwealth engaged in governmental interference for time-bar purposes by permitting various instances of false testimony at his trial." Commonwealth's Brief at 18. The Commonwealth characterizes Appellant's argument as "undeveloped, unsupported, and irrelevant." ***Id.*** at 19.

---

[6] We note that the PCRA court did not address Appellant's government-interference claim or alleged ***Brady*** violations.

Upon review, we conclude that Appellant has failed to demonstrate that government interference prevented him from raising his claim in a timely manner. 42 Pa.C.S. § 9545(b)(1)(i). Indeed, as the Commonwealth asserts, "at most, [Appellant] baldly asserted that information that was not presented at his trial was 'suppressed' . . . without showing that the government improperly withheld the information from him or prevented it from being presented at trial." Commonwealth's Brief at 19. **See Commonwealth v. Stokes**, 959 A.2d 306 (Pa. 2008) (rejecting argument that a **Brady** claim operates to negate—wholly—the statutory timeliness requirements set forth in the PCRA).

In sum, we conclude that Appellant was not entitled to the benefit of the first or second enumerated exceptions to the PCRA time bar. Therefore, the PCRA court did not err in denying his untimely petition because it lacked jurisdiction.

In his fourth issue, Appellant complains that the PCRA court erred in ruling that his claim related to Rodney Everett was previously litigated. Appellant's Brief at 27–37. According to Appellant, "[t]he District Attorney withheld evidence obtained by its own Office and Court Officer William Massey that Rodney Everett excluded [Appellant as] the murder[er]. . . . Had the jury heard this evidence it would not have voted to convict [Appellant]." **Id.** at 32. Appellant also includes in this section of his argument an ineffective assistance of counsel ("IAC") claim based on

***Commonwealth v. Bazemore***, 614 A.2d 684 (Pa. 1992).[7]  Appellant's Brief

at 33–36.

   The Commonwealth's response is two-fold.  First, it submits that IAC

claims do not defeat the PCRA time bar.  Commonwealth's Brief at 19 (citing

***Commonwealth v. Crews***, 863 A.2d 498, 503 (Pa. 2004)).  Second, the

Commonwealth contends that Appellant's argument regarding Rodney

Everett was previously litigated in his fourth PCRA petition and, therefore,

not entitled to review.  ***Id.*** at 20 (citing 42 Pa.C.S. §§ 9543(a)(3) and

9544(b),  ***Commonwealth v. Robinson***, 82 A.3d 998, 1005 (Pa. Super.

2013)).

   Without addressing the IAC component of Appellant's fourth issue, the

PCRA court agreed with the Commonwealth's position on Rodney Everett:

> [Appellant], has he had done previously, again attempted
> to attack the statements made by Rodney Everett.  Pursuant to
> section 9543 of the PCRA, a petitioner is eligible for relief only if
> "the allegation of error has not been previously litigated or
> waived."  42 Pa.C.S.A. § 9543(a)(3).  Pursuant to section 9544
> of the PCRA, "an issue has been previously litigated if . . . it has
> been raised and decided in a proceeding collaterally attacking
> the conviction or sentence."  42 Pa.C.S.A. § 9544(a)(3).  Here,
> arguments over the credibility of Mr. Everett, as well as
> arguments related to how Mr. Everett's statements were
> presented, have been the subject of two direct appeals and prior

---

[7]  In ***Bazemore***, the Pennsylvania Supreme Court held that the transcript of
prior testimony by an unavailable Commonwealth witness was not
admissible at trial because the Commonwealth had failed to disclose to the
defense vital impeachment evidence regarding that witness prior to the
preliminary hearing.  ***Bazemore***, 614 A.2d at 688.

PCRA petitions. As such, this court has no jurisdiction to entertain [Appellant's] claims.

PCRA Opinion, 2/1/16, at unnumbered 5.

Upon review of the certified record, we discern no abuse of the PCRA court's discretion or error of law in its legal conclusions. Appellant's ineffectiveness claims are not cognizable as an exception to the PCRA's time bar. *Commonwealth v. Albrecht*, 994 A.2d 1091, 1095 n.5 (Pa. 2010). Moreover, a panel of this Court ruled in 2005 that Appellant's *Bazemore* claim "could have been raised as early as 1992." *Commownealth v. Crosland*, 2634 EDA 2004, 883 A.2d 686 (Pa. Super. filed June 22, 2005) (unpublished memorandum at 6–7). Thus, Appellant's fourth issue does not warrant relief.

In his fifth issue, Appellant invokes the third time-bar exception by joining an IAC claim with the United States Supreme Court's decision *Martinez v. Ryan*, ____ U.S. ____, 132 S.Ct. 1309 (2012), to create a new constitutional right.[8]   42 Pa.C.S. § 9541(b)(1)(iii).   Initially, Appellant

---

[8] *Martinez* involved a federal *habeas* petition alleging ineffective assistance of PCRA counsel. The United States Supreme Court acknowledged that, under the doctrine of "procedural default," a federal habeas court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *Martinez*, 132 S.Ct. at 1316. However, faced with an IAC claim, the *Martinez* Court created a narrow exception: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at
*(Footnote Continued Next Page)*

concedes that this claim was previously litigated, but then he alleges that no court actually reviewed the claim due to a judicial breakdown. *Id.* at 38, 41.[9] Furthermore, Appellant argues that his IAC claim has merit and, therefore, is entitled to review. *Id.* at 42–44 (citing **Bazemore**).

The Commonwealth counters as follows: "This Court has held that 'while Martinez represents a significant development in federal habeas corpus law, it is of no moment with respect to the way Pennsylvania courts apply the plain language of the time bar set forth in section 9541(b)(1) of the PCRA.'" Commonwealth's Brief at 20 (quoting **Commonwealth v.**

_____
*(Footnote Continued)* ———————————

trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 1320.

[9] The PCRA court addressed this allegation as follows:

> [Appellant] previously filed a PCRA [petition] on May 16, 2012, which he supplemented on August 7, 2012, and August 21, 2012, wherein he [raised] claims under *Miller v. Alabama*, 132 S.Ct. 2455 (2012), and *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). That petition was dismissed on June 19, 2013, and [Appellant] did not appeal. [Appellant] filed another PCRA petition on July 25, 2013, which he entitled, "Amended PCRA not Second."

PCRA Court Opinion, 2/1/16, at unnumbered 5 (footnote omitted). Our review of the record reveals that Appellant sought reinstatement of his appeal rights in a filing dated January 23, 2014, claiming that he did not have notice of the June 19, 2013 dismissal until he received the PCRA Unit Docket Sheet on December 17, 2013. Letter Motion, 1/23/14. The PCRA court concluded, "Had [Appellant] exercised due diligence he could have discovered that his prior petition had been dismissed." PCRA Opinion, 2/1/16, at unnumbered 5. We agree, thus finding no error.

- 16 -

*Saunders*, 60 A.3d 162, 165 (Pa. Super. 2013)). The PCRA court agreed, and so do we. As the PCRA court opined:

> [Appellant] alleged that in *Martinez*, the United States Supreme Court recognized a new constitutional right and, in accordance with this new constitutional right, he was now entitled to raise claims that his trial counsel and direct appellate counsel were ineffective. [Appellant] was mistaken. In *Martinez*, the Supreme Court held that where counsel is ineffective in a prior, initial state collateral review proceeding, and where the ineffectiveness caused the petitioner to procedurally default on a substantive claim, counsel's ineffectiveness "may provide cause [to excuse a] procedural default in a federal habeas proceeding." [*Martinez*, 132 S.Ct.] at 1315. Yes, as the *Martinez* Court explicitly declared, it was not handing down a "constitutional ruling" and it was not recognizing a new constitutional right. *Id.* at 1319-1320. Rather, the *Martinez* Court based its holding upon an "equitable" exception to a court-created doctrine that is applicable only in the federal courts. *Id.*; see also *Commonwealth v. Saunders*, 60 A.3d 162, 165 (Pa. Super. Ct. 2013) (holding that "while *Martinez* represents a significant development in federal habeas corpus law, it is of no moment with respect to the way Pennsylvania courts apply the plain language of the time bar set forth in section 9545(b)(1) of the PCRA."). As such, this claim was meritless.

PCRA Court Opinion, 2/1/16, at unnumbered 6–7. We adopt the PCRA court's sound reasoning as our own and conclude that Appellant's fifth issue does not warrant relief.

Also under the guise of the third enumerated exception, Appellant claims that he is actually innocent and, therefore, entitled to an evidentiary hearing on the merits. Appellant's Brief at 12 (citing *McQuiggin v. Perkins*, ___ U.S. ___, 133 S.Ct. 1924 (2013)). The Commonwealth responds that "an assertion of innocence does not confer jurisdiction on an otherwise untimely filed PCRA petition." Commonwealth's Brief at 18 (citing

42 Pa.C.S. § 9545(b)(1), and **Commonwealth v. Fahy**, 737 A.2d 214, 223 (Pa. 2014) (assertions of actual innocence do not excuse the time-bar)). We agree. In doing so, we adopt as our own the reasoning of the PCRA court:

> [Appellant] further raised a claim under the United States Supreme Court's decision in *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013). This case held that a showing of actual innocence was sufficient to circumvent the statute of limitations for filing a federal habeas corpus petition under the Anti-Terrorism and Effective Death Penalty Act (AEDPA). However, it did not address state collateral review proceedings or substantive constitutional issues. As such, contrary to [Appellant's] argument, *McQuiggin* did not announce a new relevant rule of constitutional law that has been made retroactive by either our Supreme Court or the Supreme Court of the United States. Therefore, [Appellant's] claim was meritless.

PCRA Court Opinion, 2/1/16, at unnumbered 7. Appellant is not entitled to relief under the third time-bar exception.

In his final issue, Appellant challenges the legality of his mandatory life sentence without parole on two fronts: **Miller v. Alabama**, ___ U.S. ___, 132 S.Ct. 2455 (2012), and **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 211 (2015). Appellant's Brief at 45–50.[10] The **Miller** Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violated the Eighth Amendment's prohibition on cruel and unusual punishment." **Miller**, 132 S.Ct. at 2460.

Invoking **Miller**, Appellant acknowledges that he was twenty-two years old at the time of his crimes. Appellant's Brief at 46. However, he

---

[10] The PCRA court did not address Appellant's sentencing issues.

relies on science to declare himself a juvenile and, therefore, ineligible for a

mandatory life-without-parole sentence:

> [Appellant's] sentence is a disproportionate punishment as a mandatory life-without parole for a youth homicide offender, violat[es] the Eight Amendment's (U.S.C.A.) prohibition on "cruel and unusual punishment" for the undisputed reasoning of a youth offender between the ages of 18 to 25 suffering from the same similar irresponsible characteristic and immature traits as those describe[d] in association with juvenile offenders. Drawing the line at 18 years places [Appellant] into the same categorical rule the United States Supreme Court reject[s] today as unconstitutional. . . . The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. Expert testimony was given by Doctor Steinberg, lead scientist the age 18-to-25, are still susceptible to immaturities that will, in a foreseeable time, prove to be an unfortunate yet familiar transient phase. This is especially [true] when considering that biological immaturity is being used as a conduit for exposure to negative influence and, in many cases, has been in such manner since one's juvenile upbringing. A relevant yet <u>neglected</u> viewpoint when observing certain lifestyle behavior within impoverish[ed] and crime-producing neighborhoods within prevalent societies across the nation.
>
> Therefore, the same argument that is being declared under Miller . . . can rightfully as well as "scientifically" be argued here. The Court in <u>Miller</u> validated the brain does not mature until mid-20's (i.e. 25). According to the scientific brain studies . . . [t]here can be no bright line draw[n] at age 17. Science and social science expert testimony offered at the United States Supreme Court states the mind does not fully develop until mid-20's (i.e. to 25).
>
> To that end, its [sic] the lower court opined opinion that [Appellant] herein was age 22 at the time of the alleged offense and he therefore does not fall within the range. . . . The lower court states the Court in Miller limited itself to age 17. [Appellant] contends the lower Court err[ed]. The United States Supreme Court validated the science studies and new brain imagining research study that brain wiring continues to develop until mid-20's (i.e. 25). To that end, age became an element in sentence scheme. . . . And that as a sentencing factor it violated

the Eight[h] Amendment. [Appellant] fits into that class of juveniles.

Appellant's Brief at 45–46 (some internal citations omitted).[11]

While we appreciate Appellant's creative reasoning, **Miller** itself precludes us from granting him relief. As the PCRA court opined:

> The *Miller* holding specifically limited itself to juveniles under eighteen years of age who were sentenced to life without parole for committing the crime of murder. Although [Appellant] was sentenced to life without parole and convicted of second degree murder, he was over eighteen years old at the time of the crime; he was twenty-to years old at the time of the crime. The circumstances of this case exceed the parameters of the Supreme Court's *Miller* decision. Therefore, [Appellant's] *Miller* claim was denied.

PCRA Opinion, 2/1/16, at unnumbered 8. **See also Cintora**, 69 A.2d at 764 (holding petitioner's argument that **Miller** should be extended to included offenders who were older than seventeen did not render PCRA petition timely).

Lastly, invoking **Alleyne**, Appellant argues that a jury should have decided if his age was a mitigating factor, thereby precluding imposition of a mandatory life-without-parole sentence. Appellant's Brief at 46–50. The **Alleyne** Court held, "Any fact that, by law, increases the penalty for a crime

---

[11] We reject the Commonwealth's argument that Appellant waived this claim. The PCRA court did not strike Appellant's supplemental filing, and it addressed Appellant's **Miller**-based argument in its Pa.R.A.P. 1925(a) opinion. **See Brown**, 141 A.3d at 504–505 ("[W]hen a petitioner files supplemental materials to a PCRA petition, and the PCRA court considers such materials, an attempt by the Commonwealth to preclude consideration of such materials fails.").

- 20 -

is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, 133 S.Ct. at 2155. According to Appellant:

> Science and social science, Psychology and brain imaging studies demonstrate difference between adolescent and adult minds. Brain develop maturity is not [like] a machine[;] it does not have a switch to turn off at age 18. . . . The lower Court [erred t]o hold that the United States Supreme Court limited the scope . . . when the Court validated the science and social science and heard testimony by the Experts. The Court accept[ed] those facts as true. Mid 20's (i.e. 25).
>
> Wherefore, this Court should send this claim to the lower court and allow a jury to decide his juvenile [sic] mitigating factors. . . .

*Id.* at 50.

> In response, the Commonwealth argues waiver and lack of merit:
>
> [Appellant] never asserted [this *Alleyne* claim] in any of his filings before the PCRA court and thus failed to preserve it for this Court's review. Pa.R.A.P. 302(a).
>
> In any event, the decision could not have conferred jurisdiction on the PCRA court to review [Appellant's] petition. The Pennsylvania Supreme Court recently held that <u>Alleyne</u> does not apply retroactively to attacks on mandatory minimum sentences advanced on collateral review. See Commonwealth v. Washington, ___ A.3d ___, 2016 WL 3909088, *8 (Pa., decided July 19, 2016). The Court held that <u>Alleyne</u> sets forth no new rule of constitutional law as it "neither alters the range of conduct nor the class of persons punished by the law" and "is not of a groundbreaking, 'watershed' character." <u>Id.</u> at 7, citing <u>Alleyne</u>, 133 S.Ct. at 2155.

Commonwealth's Brief at 22–23 (some internal citations omitted).

Upon review, we are constrained to agree with the Commonwealth for the reasons it advances. Appellant's *Alleyne* challenge is waived and meritless. *See Commonwealth v. Ligons*, 971 A.2d 1125, 1163 (Pa.

- 21 -

2009) (claims not raised in PCRA petition are waived) (citation omitted); *Commonwealth v. Washington*, 142 A.3d 810, 820 (Pa. 2016) (holding that *Alleyne* does not apply retroactively to cases pending on collateral review).

In conclusion, because Appellant's PCRA petition was untimely and no exceptions apply, the PCRA court correctly determined that it lacked jurisdiction to consider the merits of Appellant's PCRA petition and properly dismissed it as untimely filed. Accordingly, we affirm the PCRA court's October 20, 2015 Order. *Commonwealth v. Lawson*, 90 A.3d 1, 8 (Pa. Super. 2014).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/12/2017